## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : **CHAPTER 11** |
| **WEABER, INC.** | : |
| | : |
| **Debtor.** | : **CASE NO. 1:25-bk-02167 (HWV)** |

### FOURTH INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

Upon consideration of the motion of Weaber, Inc. (the "**Debtor**") for authority to use cash collateral on an interim and final basis pursuant to Bankruptcy Rule 4001(b) and 11 U.S.C. § 363(c)(2)(B) (the "**Motion**") [Dkt No. 11] and the Court having held a preliminary hearing on the Motion in accordance with Bankruptcy Rule 4001(b)(2) on August 6, 2025, and entered the First Interim Order Authorizing Use of Cash Collateral (the "**First Interim Order**") [Dkt. No. 32], a second interim hearing on the Motion on August 19, 2025, and entered the Second Interim Order Authorizing Use of Cash Collateral (the "**Second Interim Order**") [Dkt. No. 52], and third interim hearings on the Motion on August 28, 2025, and September 4, 2025, and entered the Third Interim Order Authorizing Use of Cash Collateral (the "**Third Interim Order**") [Dkt. 87] authorizing the Debtor to continue to use cash collateral on an interim basis, and it appearing that notice of the Motion, together with notice of the fourth interim hearing has been given and served by the Debtor to (1) Counsel for the Office of the United States Trustee, (2) Counsel for JPMorgan Chase Bank, N.A. ("**JPMC**") and counsel for Cyprium Investors IV AIV I LP ("**Cyprium**"), (3) the Debtor's Top Twenty Unsecured Creditors, and (4) the Rule 2002 list of creditors, following a fourth interim hearing held on September 16, 2025, and after due deliberation and finding good and sufficient cause for the entry of the within order (this "**Fourth Interim Order**," and together with the First Interim Order, the Second Interim Order, and the Third Interim Order, the "**Interim Orders**"), the Court makes the following findings of fact and conclusions of law:

A. **Notice and Hearing**. Notice of the Motion pursuant to Federal Rule of Bankruptcy Procedure 9006(c) for the preliminary hearing, the second interim hearing, the third interim hearings, and the fourth interim hearing on the Debtor's use of cash collateral has been served in accordance with Section 102(1) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b), or if by consent, under Federal Rule of Bankruptcy Procedure 4001(d) which notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested.

B. **Chapter 11 Filed**. The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on August 1, 2025 (the "**Petition Date**") and is presently operating as a debtor-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.

C. **Jurisdiction and Venue**. This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Chapter 11 Case and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. **Statutory Committee**. On August 25, 2025, the United States Trustee for the Middle District of Pennsylvania (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (the "**Creditors Committee**") [Dkt. No. 59].

E. **Debtor's Stipulation**. After consultation with its attorneys and financial advisors, the Debtor admits, stipulates, acknowledges, and agrees as follows (the provisions set forth in Paragraph E(i) through (vii) below are referred to herein, collectively, as the "**Stipulations**"); provided, that these Stipulations are subject to the rights of any party-in-interest, including the

Creditors Committee, to commence a Challenge as set forth in Paragraph 14 of this Fourth Interim Order:

   (i)  *First Lien Documents.* Pursuant to that certain *Credit Agreement*, dated October 12, 2017, as amended and modified from time to time (the "**First Lien Credit Agreement**", and any other agreements and documents executed or delivered in connection therewith, the "**First Lien Documents**"), by and among the Debtor as borrower, WT Hardwoods Group, Inc. ("**Holdings**") as guarantor, the lenders party thereto from time to time (the "**First Lien Lenders**"), and JPMC, as administrative agent (the "**First Lien Agent**," and together with the First Lien Lenders, the "**First Lien Secured Parties**"), the First Lien Secured Parties provided revolving loans, letters of credit, and other financial accommodations to the Debtor and its affiliates pursuant to the First Lien Documents.

   (ii)  *First Lien Secured Obligations.* All obligations arising prior to the Petition Date that constitute "Secured Obligations" as defined in the First Lien Credit Agreement, including principal and accrued and accruing interest, together with all costs, fees, expenses (including attorneys' fees and legal expenses), premiums, and other charges accrued, accruing, or chargeable in connection therewith, whether prepetition or postpetition, constitute the "**First Lien Secured Obligations**." The portion of the First Lien Secured Obligations relating to the "Revolving Loans," "Letters of Credit," and "Swingline Loans," each as defined in the First Lien Credit Agreement, in an aggregate principal amount of up to $28,000,000, is referred to as the "Revolving Obligations." As of the Petition Date, the Debtor was indebted to the First Lien Secured Parties under the First Lien Documents for Revolving Obligations in a principal amount of approximately $25,452,645.96. The First Lien Secured Obligations are secured by first priority security interests

in and liens (the "**First Prepetition Liens**") on all "Collateral" as defined in the First Lien Credit Agreement (the "**Prepetition Collateral**").

    (iii)  *Second Lien Documents.* Pursuant to that certain *Subordinated Term Loan, Guaranty and Security Agreement*, dated December 16, 2022, as amended and modified from time to time (the "**Second Lien Credit Agreement**"), and any other agreements and documents executed or delivered in connection therewith, the "**Second Lien Documents**," together with the First Lien Documents, the "**Prepetition Loan Documents**"), by and among the Debtor as borrower, Holdings and any other affiliates of the Debtor as guarantors, and Cyprium (the "**Second Lien Creditor**," together with the First Lien Secured Parties, the "**Prepetition Secured Creditors**"), the Second Lien Creditor provided term loans in the approximate amount of $8,000,000 to the Debtor and its affiliates pursuant to the Second Lien Documents.

    (iv)  *Second Lien Secured Obligations.* All obligations arising prior to the Petition Date that constitute "Obligations" as defined in the Second Lien Credit Agreement, constitute the "**Second Lien Secured Obligations**" (together with the First Lien Secured Obligations, the "**Prepetition Secured Obligations**"). As of the Petition Date, the Debtor was indebted to the Second Lien Creditor under the Second Lien Documents in an amount of approximately $8,000,000. The Second Lien Secured Obligations are secured by second priority security interests in and liens on the Prepetition Collateral (the "**Second Prepetition Liens**," together with the First Prepetition Liens, the "**Prepetition Liens**").

    (v)  *Intercreditor Agreement.* Pursuant to that certain *Subordination and Intercreditor Agreement* dated as of December 16, 2022 (as amended and modified from time to time, the "**Intercreditor Agreement**"), by and among the First Lien Agent (for the benefit of itself and the other First Lien Secured Parties) and the Second Lien Creditor, and acknowledged by the

Debtor and Holdings, the Prepetition Secured Creditors have agreed, among other things and as more specifically set forth therein, on their respective rights, interests, obligations, priorities, and positions with respect to the Prepetition Collateral.

(vi)     *Prepetition Secured Creditors.*     No claims, objections, challenges, counterclaims, causes of action and/or choses in action, defenses or setoff rights of the Debtor exist against the Prepetition Secured Creditors under the Prepetition Loan Documents or the Prepetition Secured Obligations under any contract or tort (including, without limitation, lender liability) theories of recovery, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 (including, without limitation, sections 510, 544, 547, 548, 549, or 550) of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

(vii)     *Prepetition Liens.*     As of the Petition Date, the Prepetition Secured Obligations were fully secured pursuant to the Prepetition Loan Documents by valid, perfected, enforceable, and non-avoidable Prepetition Liens on the Prepetition Collateral.  These liens were granted subject only to those liens on the Prepetition Collateral specifically permitted under the Prepetition Loan Documents, to the extent such liens, security interests, or encumbrances are: (a) valid, perfected, and non-avoidable as of the Petition Date, or are subsequently perfected in accordance with section 546(b) of the Bankruptcy Code; and (b) senior to, and have not been or are not subject to being subordinated to, the Prepetition Secured Creditors' liens on and security interests in the Prepetition Collateral or otherwise avoided, and, in each case, only to the extent such encumbrances remain senior and outstanding (the "**Permitted Prior Liens**").

F.     **Cash Collateral**.  The Debtor seeks authority, on an interim basis, to use cash collateral as defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**") under the

terms described herein to administer the Chapter 11 Case and fund operations. The Debtor will seek to modify or extend the relief granted in this Fourth Interim Order by seeking entry of a subsequent interim order (the **"Fifth Interim Order"** and, with respect to any order granting the Motion on a final basis, the **"Final Order"**) on or before September 30, 2025, subject to the Court's availability.

G. **Necessity and Best Interest**. The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business in Chapter 11. The Debtor requires immediate authority to continue to use Cash Collateral as defined herein on an interim basis in order to continue its business operations without interruption and proceed toward the objective of formulating an effective plan of reorganization. Debtor's use of Cash Collateral to the extent and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

H. **Adequacy of the Budget**. The amount of Cash Collateral authorized for use pursuant to this Fourth Interim Order, pending a hearing on entry of a Fifth Interim Order or a Final Order, as the case may be, shall not exceed the amounts set forth for weeks 7, 8 and 9 (without duplication of any amounts spent in week 7 under the Third Interim Order) in the Debtor's budget annexed hereto as **Exhibit A** (the "Budget"), specifically: (a) the amount reflected in the "Current Disbursements" line, totaling approximately $3,529,891, (b) the amount reflected in the "Interest" line in the amount of $45,153 per week, and (c) the amount reflected in the "Lumber" line, not to exceed $400,000 per week; *provided, however*, that such lumber purchases shall be made solely to fulfill specified customer orders mutually agreed upon by the Debtor and the First Lien Agent. As part of the Debtor's reporting obligations under Paragraph 5 of this Fourth Interim Order, the Debtor shall provide the First Lien Agent and counsel for the Creditors Committee with

proof of both the purchase of raw materials and the corresponding sale to the specified customers within two (2) business days.

I. **Purposes**. The Debtor is authorized to use Cash Collateral solely for and limited to the amounts as indicated in the Budget.

Therefore, it is

**ORDERED** as follows:

1. **Use of Cash Collateral**. Subject to the terms and conditions of the First Interim Order, the Second Interim Order, the Third Interim Order, and this Fourth Interim Order, and in accordance with the Budget, the Debtor is authorized to use Cash Collateral, pending a hearing on entry of a Fifth Interim Order or a Final Order (the "**Fifth Interim Hearing**"), in the amounts set forth for weeks 7, 8 and 9 of the Budget (without duplication of any amounts spent in week 7 under the Third Interim Order). Such use shall be limited to: (a) the amount reflected in the "Current Disbursements" line, totaling approximately $3,529,891, (b) the amount reflected in the "Interest" line in the amount of $45,153 per week, and (c) the amount reflected in the "Lumber" line, not to exceed $400,000 per week; *provided*, *however*, that any such lumber purchases shall be made solely to satisfy specified customer orders that are mutually agreed upon by the Debtor and the First Lien Agent. As part of the Debtor's reporting obligations under Paragraph 5 of this Fourth Interim Order, the Debtor shall provide the First Lien Agent and counsel for the Creditors Committee with documentation evidencing both the purchase of the raw materials and the corresponding sale to the identified customers within two (2) business days.

2. **Adequate Protection**. The Prepetition Secured Parties are entitled, pursuant to Sections 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection against any diminution in value, if any, of their interests in the Prepetition Collateral, including the Cash

Collateral, arising out of the imposition of the automatic stay, the granting of the Carve Out, and the Debtor's use, sale, lease, or disposition of the Prepetition Collateral, including all Cash Collateral, during the pendency of the Chapter 11 Case (collectively, "**Diminution in Value**"). In consideration of the foregoing, the Prepetition Secured Creditors shall receive adequate protection as follows:

(a) **Adequate Protection Liens**. To the extent of any Diminution in Value and/or the Debtor's use of the Prepetition Collateral (including Cash Collateral), each of the First Lien Agent (for the benefit of itself and the other First Lien Secured Parties) and the Second Lien Creditor are granted, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and perfected replacement liens on the Prepetition Collateral and additional postpetition security interests in, and liens on, (i) the Collateral[1] (the "**Adequate Protection Liens**" or "**Replacement Liens**"), and (ii) the proceeds of actions brought under section 549 of the Bankruptcy Code to recover any unauthorized post-petition transfer of Collateral, subject only to any Permitted Prior Liens and the Carve Out defined herein. Except as set forth in section (ii) of this Paragraph, the Collateral shall not include claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state-law equivalents ("**Avoidance Actions**"), but subject to the entry of a Final Order, shall include any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**"). The Adequate Protection Liens granted to the First Lien Agent (for the benefit of itself and the other First Lien Secured Parties) pursuant to the First Interim

---

[1] "**Collateral**" means all Prepetition Collateral and all other property of the Debtor, whether now owned or hereafter acquired, and wherever located, of any kind or nature, whether real or personal, tangible or intangible, and all products, proceeds, and supporting obligations relating to the foregoing.

Order, the Second Interim Order, and the Third Interim Order as confirmed by this Fourth Interim Order shall secure the First Lien Secured Obligations, and the Adequate Protection Liens granted to the Second Lien Creditor shall secure the Second Lien Secured Obligations. Except as set forth herein, until the indefeasible payment in full in cash of the Secured Obligations, the Adequate Protection Liens shall not be subject to or *pari passu* with any lien or security interest by any court order heretofore or hereinafter granted in the Chapter 11 Case or any Successor Case (as defined below). The Adequate Protection Liens shall remain valid and enforceable against any trustee or estate representative appointed in the Chapter 11 Case or any Successor Case, including upon conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and/or upon dismissal of the Chapter 11 Case or Successor Case. Furthermore, the Adequate Protection Liens shall not be subject to sections 506(c) (only upon entry of the Final Order granting such relief), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code shall rank *pari passu* with or senior to the Adequate Protection Liens. The Adequate Protection Liens shall be payable from, and have recourse to, the Collateral subject to and in accordance with the relative priorities set forth in the Intercreditor Agreement, subject only to the Carve Out and any Permitted Liens.

(b) **Adequate Protection Payments**. The Prepetition Secured Creditors shall receive additional adequate protection in the form of payments as set forth below (the "**Adequate Protection Payments**"). The Debtor shall pay interest on the First Lien Secured Obligations to the First Lien Secured Parties in cash at the non-default rate of 9.25% per annum on a weekly basis with payment to occur on the last business day of each week. The First Lien Secured Parties shall be reimbursed for all fees and expenses, including, but not limited to, attorneys' fees (whether incurred before or after the petition date) and interest and fees related to undrawn letters of credit,

Case 1:25-bk-02167-HWV    Doc 117    Filed 09/19/25    Entered 09/19/25 12:10:28    Desc
Main Document    Page 9 of 34

as provided in the First Lien Documents. All such fees and expenses shall be secured by the Collateral. The Debtors are authorized and directed to pay, without further Court order, the reasonable and documented fees and expenses (whether incurred before or after the Petition Date) of the "**First Lien Agent Advisors**," including, but not limited to: (i) Morgan, Lewis & Bockius LLP, and (ii) Meru, LLC; *provided, however*, that for fees and expenses incurred on or after the Petition Date, each such professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtor, the U.S. Trustee, and counsel to the Creditors Committee (collectively, the "**Fee Notice Parties**"). Any objections raised by any Fee Notice Party with respect to such summary invoices must (x) be in writing, (y) state with particularity the grounds for such objection, and (z) be submitted to the affected professional(s) within five (5) calendar days after delivery of such invoices to the Fee Notice Parties (such five (5) day calendar period, the "**Fee Objection Period**"). If no objection to payment of the requested fees and expenses is made, in writing, by any of the Fee Notice Parties prior to expiration of the Fee Objection Period, then such invoice shall be promptly paid, without further order of, or application to, the Court or notice to any other party, and, in any case, within five (5) calendar days following the expiration of the Fee Objection Period, and shall not be subject to any further review, challenge, or disgorgement. If, within the Fee Objection Period, a Fee Notice Party sends to the affected professional a written objection to such invoice, then only the disputed portion of such fees and expenses shall not be paid until the

- 10 -

objection is resolved by the applicable parties in good faith or by order of the Court, and any undisputed portion shall be paid within five (5) calendar days following the expiration of the Fee Objection Period.

(c) **Adequate Protection Superiority Claims**. As further adequate protection, and subject to the Carve Out, each of the Prepetition Secured Creditors is granted an allowed administrative claim against the Debtor's estate under section 503 of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtor and its estate of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, including, without limitation (to the extent allowed under the Bankruptcy Code), claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**"), to the extent of any Diminution in Value of such Prepetition Secured Creditors' interests in the Prepetition Collateral. The Adequate Protection Superpriority Claims shall be payable from and have recourse to the Collateral subject to and in accordance with the relative priorities set forth in the Intercreditor Agreement, subject to payments due under 28 U.S.C. § 1930(a)(6).

(d) **Perfection of Adequate Protection Liens.** The Interim Orders shall constitute sufficient and conclusive evidence of the priority, perfection, and validity of the Adequate Protection Liens and security interests granted therein and herein, effective as of the Petition Date, without the need for any further action or compliance with any federal, state, or local requirements or laws requiring notice, filing, registration, recording, or possession of the Collateral, or any other act to validate or perfect such security interests or liens, including, without limitation, control agreements with any deposit bank or financial institution holding a depository

account or other account consisting of or containing Collateral (a **"Perfection Act"**). Notwithstanding the foregoing, if the First Lien Agent, in its sole discretion, elects to file, record, or otherwise effectuate any Perfection Act, the First Lien Agent is authorized to do so, and the Debtor is authorized and directed to cooperate and perform such acts to the extent necessary or required by the First Lien Agent. Any such act shall be deemed accomplished as of the date and time of entry of the First Interim Order, regardless of the date and time such action is completed. In such an event, any filing or recording office is authorized to accept, file, or record any document in connection with such act in accordance with applicable law. The First Lien Agent may also choose to file, record, or present a certified copy of the First Interim Order, the Second Interim Order, the Third Interim Order, or this Fourth Interim Order in the same manner as a Perfection Act, which shall have the same effect as a Perfection Act. In such an event, the applicable filing or recording office is authorized to accept, file, or record the certified copy of the First Interim Order, the Second Interim Order, the Third Interim Order, or this Fourth Interim Order in accordance with applicable law. Should the First Lien Agent attempt to file, record, or perform a Perfection Act, any defect or failure in connection with such attempt shall in no way limit, waive, or alter the validity, enforceability, attachment, or perfection of the postpetition liens and security interests granted pursuant to the First Interim Order, the Second Interim Order, the Third Interim Order, or this Fourth Interim Order.

(e) **Proceeds of Discontinued Inventory**. As further adequate protection, the Debtors shall remit to the First Lien Secured Parties the proceeds, including any insurance proceeds, (net of any transportation or other expenses directly attributable to any sale) of any disposition (including as a result of any casualty event) of inventory that has been discontinued or that is no longer integral to the Debtor's ongoing business operations for application to the First

- 12 -

Lien Secured Obligations without further order of the Court, *provided*, *however*, that any sales of such inventory shall be subject to approval by the First Liens Secured Parties in their sole and absolute discretion.

3.     **Intercreditor Agreement**.  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Loan Documents, (a) shall remain in full force and effect, (b) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Creditors, including with respect to any Adequate Protection Liens and any Adequate Protection Superpriority Claims, and (c) shall not be deemed amended, altered, or modified by the terms of the Interim Orders unless expressly set forth therein.

4.     **Budget**.  The Budget shall be updated, modified, or supplemented by the Debtor, in form and substance acceptable to the First Lien Agent in its sole discretion, no less than two (2) business days prior to the hearing to consider entry of the Fifth Interim Order, unless otherwise agreed by the Debtor and the First Lien Agent.  The Budget shall, at a minimum, set forth on a weekly and line-item basis:  (1) projected cash receipts; (2) projected cash disbursements (including projected accrued but unpaid and/or deferred disbursements related to administrative expenses), including ordinary course operating expenses, capital expenditures, bankruptcy-related expenses, and certain other fees and expenses related to the Interim Orders; (3) net cash flow;

- 13 -

(4) total available liquidity; and (5) professional fees and disbursements for the Debtor's professionals, professionals of the Creditors Committee, and other estate professionals.

5. **Reporting**. Until the First Lien Secured Obligations have been paid in full, the Debtor shall deliver the following reports to the First Lien Agent, Cyprium, counsel for the Creditors Committee, and the Office of the United States Trustee on a weekly basis:

(a) a variance report comparing actual cash receipts and disbursements of the Debtor with the receipts and disbursements in the most-recently-delivered Budget, on both a line-item and aggregate basis, for the cumulative period through the end of the most recent calendar week then ended, together with all supporting schedules;

(b) a report showing all accounts receivable and accounts payable, including the aging of each as of the end of the most recent calendar week then ended, all collections, all new inventory purchases, and copies of all customer purchase orders through such date, including (x) an accounts receivable roll-forward report that reconciles to the Debtor's accounts receivable aging and sales reports and (y) an accounts payable aging report including invoice dates;

(c) an updated listing of all inventory, by type, stock keeping unit, quantity, and value as of the end of the most recent calendar week then ended, together with an inventory roll-forward report that reconciles to the Debtor's inventory and sales reports;

(d) a report detailing all actual cash disbursements made through the end of the most recent calendar week then ended and the Debtor's cash position as of such date, with sufficient information to identify (x) the collateral used, expended, or dissipated, (y) any collateral generated as replacement collateral during such reporting period, and (z) expenses accrued but not paid; and

- 14 -

(e)     documentation supporting raw lumber material purchases and related sales made in connection with specified customer orders mutually agreed upon by the Debtor and the First Lien Agent.

6.     **Other Covenants**.  The Debtor shall comply with the following covenants:

(a)     the Debtor shall not purchase new inventory (including lumber) during weeks 8 through 9 of the Budget, except as expressly permitted in this Fourth Interim Order and the Budget;

(b)     the Debtor shall deliver to the First Lien Agent and Cyprium a balance sheet and income statement as of the Petition Date within fifteen (15) days following the Petition Date;

(c)     the Debtor shall update, modify, or supplement its business plan in form and substance acceptable to the First Lien Agent no less than two (2) business days prior to the hearing to consider entry of the Fifth Interim Order, unless otherwise agreed by the Debtor and the First Lien Agent.  Cyprium and the Creditors Committee will be consulted with respect to the business plan; and

(d)     the Debtor and its management, personnel and advisors shall continue to make themselves available as reasonably requested by the First Lien Agent, Cyprium, and the Creditors Committee, and, in any event, on not more than two (2) business days' notice.

7.     **Use of Existing Bank Accounts on a Limited Basis**.

(a)     The Debtor shall continue to use its existing prepetition bank accounts at JPMC as debtor-in-possession accounts and shall use those accounts only for the purposes set forth in the Budget and/or Payroll, and only for authorized expenses, subject to the entry of a Final Order.  JPMC is authorized to transfer funds (including funds deposited into the Collection Account since the Petition Date), as requested by the Debtor, from, between and among the

- 15 -

Collection Account (X8189), Operating Account (X3352), Disbursement Account (X8263), and Disbursement Account (X3539) in accordance with the Budget. Except to the extent set forth in the Interim Orders (including with respect to the Adequate Protection Payments due to the First Lien Secured Parties under paragraphs 2(c) and 7(c) of the First Interim Order, the Second Interim Order, and the Third Interim Order, Paragraph 2(g) of the Third Interim Order, or paragraphs 2(b), 2(e), and 7(c) of this Fourth Interim Order), no funds deposited into any of the forgoing accounts shall be applied to the Prepetition Obligations.

(b)     Debtor's accounts at JPMC and the treasury management relationship between JPMC and the Debtor, shall continue to be subject to any account agreements, blocked account control agreements, cash management or treasury service agreements between the Debtor and JPMC, and JPMC shall not be liable to any party on account of (i) following Debtor's instructions or representations as to any check or other item that may be honored or as to any order of this Court, (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) an innocent mistake made despite implementation of reasonable item handling procedures.

(c)     The Debtor is authorized to pay and/or reimburse JPMC in the ordinary course of business for any claims arising prior to or after the Petition Date in connection with (x) cash management or treasury service fees and expenses, (y) checks deposited with JPMC which are dishonored or returned for insufficient funds in the applicable amount; and (z) any reimbursement or other payment obligations, such as overdrafts, arising under any account agreements, cash management or treasury service agreements between the Debtor and JPMC (collectively, the "**Bank Account Claims**"), and the Bank Account Claims shall have administrative expense priority status pursuant to Section 503(b) of the Bankruptcy Code. The

Debtor shall promptly furnish to JPMC a list of those checks, drafts, wires or ACH transfers and other withdrawals made, drawn or issued in payment of prepetition claims, the payment of which has been authorized by any order(s) of this Court. The Debtor is authorized to provide instruction to JPMC, and JPMC is authorized to accept and honor all representations from Debtor, as to which checks, drafts, wires or ACH transfers should be honored or dishonored whether JPMC believes the payment is or is not consistent with the order(s) of this Court and governing law, and whether such checks, drafts, wires or ACH transfers are dated or made prior to, on or subsequent to the Petition Date. JPMC shall have no duty to inquire as to whether such payments are authorized by an order of this Court.

8. **The Carve Out**.

(a)     As used in this Final Order, the "Carve Out" means, without duplication, the sum of: (i) all fees of the Debtor required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; (ii) subject to the terms and conditions of this Fourth Interim Order, the sum of: (y) Allowed Professional Fees (as defined below) incurred during the period commencing on the Petition Date and ending on the Trigger Date (as defined below) (the "**Pre-Trigger Date Period**") by attorneys, accountants, and other professionals retained by the Debtor and the Creditors Committee under section 327 or 1103(a) of the Bankruptcy Code (collectively, the "**Professionals**"); *provided*, *however*, that the aggregate amount of such Allowed Professional Fees included in the Carve Out pursuant to this clause (a) shall not exceed the budgeted amount set forth in the Budget for such Professionals under the category of "Professional Fees" covering the Pre-Trigger Date Period, *less* the sum of (A) all Allowed Professional Fees incurred during the Pre-Trigger Date Period and paid at any time and (B) any retainers held by any Professional (the "**Pre-Trigger Professional Fee**

- 17 -

Carve Out"); and (y) Allowed Professional Fees incurred after the Trigger Date in an aggregate amount not to exceed $25,000 (the "**Post-Trigger Professional Fee Carve Out**," and together with the Pre-Trigger Professional Fee Carve Out, the "**Professional Fee Carve Out**"); and (iii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code.

(b)    Until the First Lien Secured Obligations are paid in full, the Professional Fee Carve Out shall be funded solely and exclusively from cash in the Professional Fee Escrow Account (as defined below), except that the Post-Trigger Professional Fee Carve Out may be funded by the Debtor using Cash Collateral after the Trigger Date, and the First Lien Secured Parties shall have no obligation to fund the Carve Out or any other costs or expenses of the Chapter 11 Cases upon the occurrence of the Trigger Date.  The Pre-Trigger Professional Fee Carve Out shall be allocated on a Professional-by-Professional basis based on the amounts for each Professional budgeted in the Budget.

(c)    For purposes of this Fourth Interim Order, (a) the term "**Allowed Professional Fees**" shall mean the unpaid and outstanding reasonable fees and expenses of Professionals (i) actually incurred on or after the Petition Date and (ii) allowed at any time by a final order of the Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code (but excluding any transaction, restructuring, completion, success, or similar fees); and (b) the term "**Trigger Date**" shall mean the earliest to occur of: (i) the date on which the First Lien Agent provides written notice to the Debtor and the Creditors Committee of the occurrence of an Event of Default; (ii) December 31, 2025 (or such later date as consented to in writing by the First Lien Agent, in its sole discretion, if all First Lien Secured Obligations have not been indefeasibly paid in full as of that date; (iii) any other date on which the Debtor's right to use Cash Collateral

Case 1:25-bk-02167-HWV    Doc 117    Filed 09/19/25    Entered 09/19/25 12:10:28    Desc
Main Document    Page 18 of 34

pursuant to this Fourth Interim Order terminates; or (iv) the date on which indefeasible payment in full of all First Lien Secured Obligations occurs. If the Trigger Date occurs before the end of any week set forth in the Budget, then, for purposes of calculating the portion of the Pre-Trigger Date Professional Fee Carve Out available for that week, the amount of the "Professional Fees" line item in the Budget for such week shall be multiplied by a fraction, the numerator of which is the number of days in such week prior to the Trigger Date, and the denominator of which is seven (7).

9. **Limitation on the Use of Cash Collateral**. Neither the Professional Fee Carve Out nor the proceeds of any Collateral shall be used to pay any Allowed Professional Fees or other fees or expenses incurred by any Professional in connection with any of the following: (a) an investigation, assertion, or joinder in (but excluding any investigation into the Prepetition Secured Obligations, subject to the Committee Challenge Budget (as defined below)), any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Prepetition Secured Obligations or the prepetition or postpetition liens and security interests of any Prepetition Secured Creditor; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Secured Obligations or the prepetition or postpetition liens and security interests of the Prepetition Secured Creditors; or (iii) preventing, hindering, or delaying any Prepetition Secured Creditor's assertion or enforcement of any lien, claim, right, or security interest or realization upon any Collateral; (b) until the indefeasible payment in full of the First Lien Secured Obligations, any request to use proceeds of the Collateral other than as provided in this Fourth Interim Order, without the prior written consent of the First Lien Agent; (c) until the indefeasible payment in full of the First Lien

- 19 -

Secured Obligations, any request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, without the prior written consent of the First Lien Agent; (d) the commencement or prosecution of any action, proceeding, claim, cause of action, or defense against any Prepetition Secured Creditor or any of its respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from any Prepetition Secured Creditor under chapter 5 of the Bankruptcy Code; or (e) any act that has or could reasonably be expected to materially and adversely modify or compromise the rights and remedies of any Prepetition Secured Creditor, or that results in the occurrence of an Event of Default under this Fourth Interim Order. Notwithstanding the foregoing, up to $25,000 (the "**Committee Challenge Budget**") in the aggregate of the Carve Out may be used by the Creditors Committee solely to investigate (but not prosecute) a Challenge related to the Prepetition Secured Obligations of the Prepetition Secured Creditors, in accordance with and subject to Paragraph 14 of this Fourth Interim Order.

10. **Payment of Carve Out**.

(a)     Prior to the Trigger Date, the Debtor shall be authorized to utilize a portion of the Cash Collateral made available to the Debtor in accordance with the Budget, the Prepetition Loan Documents, and this Fourth Interim Order to fund the Professional Fee Carve Out set forth in line items "Debtors' Professional- Legal" and "Debtors' Professional- FA" of the Budget. Each week, the Debtor shall deposit such funds into an escrow account at Fulton Bank or an escrow account maintained by counsel for the Committee (as applicable depending upon whether the Professional Fee Carve Out amounts are for the Debtor's professionals or the Committee's professionals), to be used exclusively for holding Professional Fee Carve Out deposits and paying

- 20 -

Allowed Professional Fees, subject to the terms of this Fourth Interim Order (such escrow account, the "**Professional Fee Escrow Account**"), *provided, however,* that for any professional fees not held in an escrow account at JPMC, JPMC may in its sole discretion require that it be transferred to and maintained in a segregated account at JPMC. Neither the First Lien Agent nor any other First Lien Secured Party shall be responsible for ensuring that the Debtor makes such weekly deposits. The Debtor shall not deposit funds into the Professional Fee Escrow Account for weeks 7, 8 and 9 (without duplication for amounts already deposited for week 7 under the Third Interim order) in excess of $114,000, as set forth in the Budget. The Debtor's authority to use Cash Collateral for deposits which have not already been made shall terminate automatically upon the occurrence of the Trigger Date. Within three (3) business days of the Trigger Date, each Professional shall submit a statement (a "**Final Statement**") providing a reasonable estimate of the actual fees and expenses incurred from the Petition Date through the Trigger Date. Any excess funds in the Professional Fee Escrow Account beyond the total amount of the Final Statements shall be released and paid to the First Lien Agent for application to the First Lien Secured Obligations, unless all First Lien Secured Obligations have been paid in full.

(b)     Funds in the Professional Fee Escrow Account shall be held by the Debtor or counsel for the Committee or JPMC, as applicable, in trust exclusively for the benefit of the Professionals to pay Allowed Professional Fees, subject to the terms of this Fourth Interim Order and as such fees become allowed and payable under any final order of the Court. After all First Lien Secured Obligations have been paid in full, and once all accrued and unpaid Allowed Professional Fees up to the Professional Fee Carve Out have been paid in full in cash, any remaining funds in the Professional Fee Escrow Account shall revert to the Debtor for use in accordance with this Fourth Interim Order and remain subject to any liens and claims provided for

herein. Other than the establishment of the Professional Fee Escrow Account as set forth in this Fourth Interim Order, the First Lien Agent shall have no obligation to fund or arrange for the funding of any Allowed Professional Fees. If any funds from the Professional Fee Escrow Account are used for any purpose other than the payment of Allowed Professional Fees in accordance with this Fourth Interim Order, such funds shall nonetheless permanently reduce the Carve Out on a dollar-for-dollar basis.

11.     **Events of Default**.   The occurrence of any of the events of default listed in **Exhibit B** hereto shall each constitute an "**Event of Default**." Until all Prepetition Secured Obligations shall have been indefeasibly paid and satisfied in full, except to the extent permitted in the Interim Orders, no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral.

12.     **Rights and Remedies Upon Event of Default**. Upon the occurrence and during the continuance of an Event of Default: (i) the Debtor shall comply with all restrictions, prohibitions, and other terms set forth in the Interim Orders and the Prepetition Loan Documents; and (ii) the First Lien Agent shall be entitled, upon two (2) day's prior notice to the Debtor and counsel for the Creditors Committee, to seek relief from the Court to take any action or exercise any right or remedy provided under the Interim Orders or any First Lien Document, including, without limitation, terminating, reducing, or restricting the Debtor's use of Collateral (including Cash Collateral), whether by providing a shifting control notice under any account subject to a blocked account control agreement or otherwise, and enforcing any and all rights with respect to the Collateral.

13.     **Releases**. Subject to the Challenge rights of third-parties as to the extent set forth in Paragraph 14 of this Fourth Interim Order, in consideration of the Prepetition Secured Creditors

consenting to use of Cash Collateral pursuant to the provisions of the Prepetition Loan Documents and this Fourth Interim Order, the Debtor, on behalf of itself and its successors and assigns (collectively, the "**Releasors**"), shall forever release, discharge, and acquit each Prepetition Secured Creditor and its respective successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, and other representatives (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations of every kind, nature, and description, including, without limitation, any so-called "lender liability" claims or defenses, that the Releasors had, have, or may hereafter have against the Releasees as of the date hereof in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Prepetition Secured Obligations, the Prepetition Loan Documents, and any loans (as set forth in the Prepetition Loan Documents) or other financial accommodations made by the Prepetition Secured Creditors to the Debtor pursuant to the Prepetition Loan Documents or this Fourth Interim Order. In addition, upon payment in full of all Prepetition Secured Obligations owed to the Prepetition Secured Creditors by the Debtor and termination of the rights and obligations arising under the Prepetition Loan Documents (which payment and termination shall be on terms and conditions acceptable to the First Lien Agent) and this Fourth Interim Order, the Prepetition Secured Creditors shall be released from any and all obligations, liabilities, actions, duties, responsibilities, and causes of action arising or occurring in connection with or related to the Debtor, the Prepetition Loan Documents, this Fourth Interim Order, and the costs and expenses of the Debtor's Chapter 11 Case (including, without limitation, any obligation or responsibility, whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated, to pay or otherwise fund any chapter 11 expenses, the Carve Out in accordance

- 23 -

with this Fourth Interim Order, or otherwise). Nothing in this paragraph shall provide any release, discharge or other release to the Debtor, Holdings, and their respective officers, directors, and members.

14. **<u>Challenge to Prepetition Secured Obligations</u>**.

(a) Notwithstanding anything to the contrary herein, any action, claim, defense, complaint, motion, or other written opposition (a "**Challenge**") seeking to object to, challenge, contest, or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement, or claim of any kind: (i) the existence, validity, or amount of the Prepetition Secured Obligations, or (ii) the extent, legality, validity, priority, perfection, or enforceability of the Prepetition Secured Creditors' prepetition liens on and security interests in the Collateral with respect to the Prepetition Secured Obligations, must be properly filed with the Court by any party-in-interest, including the Creditors Committee, in each case, with requisite standing (in each case to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the Challenge Deadline and subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to commence such proceeding) standing, within seventy (70) days following appointment of the Creditors Committee (the "**Challenge Deadline**" and, such period, the "**Challenge Period**"). The timely filing of a motion seeking standing to file a Challenge before the termination of the Challenge Period that attaches a proposed pleading commencing such Challenge shall toll the Challenge Deadline only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court. Any pleadings filed in any Challenge proceeding shall set forth with specificity the basis for such Challenge (and any Challenge not so specified prior to the Challenge Deadline shall be deemed forever waived,

- 24 -

released, and barred).  The Court may fashion any appropriate remedy following a successful Challenge.

(b)       If no Challenge is timely filed, or if a Challenge is timely filed but denied: (x) the Prepetition Secured Obligations shall be deemed allowed in full, all payment made or applied in respect of the Prepetition Secured Obligation shall be deemed irrevocable, the Prepetition Secured Obligations shall not be subject to any setoff, recoupment, counterclaim, deduction, or claim of any kind, and the Prepetition Secured Obligations shall not be subject to further objection or challenge by any party at any time; (y) the Prepetition Secured Creditors' prepetition liens on and security interests in the Prepetition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject only to the Permitted Prior Liens, as applicable; and (z) the Prepetition Secured Creditors and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action related to or arising out of the Prepetition Loan Documents and shall not be subject to further objection or challenge by any party at any time (including, but not limited to, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtor's estate).

(c)       If this Chapter 11 Case is converted to chapter 7 prior to expiration of the Challenge Period: the chapter 7 trustee shall have until the later of expiration of the Challenge Period and the twentieth (20th) day after conversion of the Chapter 11 Case to chapter 7 to commence a Challenge; and if the Creditors Committee has commenced a Challenge prior to

expiration of the Challenge Deadline, the chapter 7 trustee may stand in the shoes of the Creditors Committee in such Challenge.

(d)     If any Challenge is timely filed before the expiration of the Challenge Period: (i) the stipulations and admissions contained in the Interim Orders shall remain binding and preclusive on the Creditors Committee and any other party in these Chapter 11 Case, including any trustee, except as to the specific stipulations or admissions challenged in such Challenge, and (ii) all other objections or claims shall be forever barred; *provided, however*, that if any Challenges to a particular stipulation or admission are withdrawn, denied, or overruled by a final, non-appealable order, such stipulation or admission shall also be binding on all parties.

15.    **Proofs of Claim**.  Notwithstanding any order entered by this Court regarding the establishment of a bar date in the Chapter 11 Case or any Successor Case (as defined below) to the contrary, the Prepetition Secured Creditors shall not be required to file proofs of claim in the Chapter 11 Case or any Successor Case for any claims arising under the Prepetition Loan Documents or the Interim Orders. The Debtor's stipulations, admissions, and acknowledgments, along with the provisions of the Interim Orders, shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Creditors with respect to all claims arising under the Prepetition Loan Documents or the Interim Orders. Notwithstanding the foregoing, the First Lien Agent, on behalf of itself and the other First Lien Secured Parties, is authorized and entitled, in its sole discretion but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate or master proofs of claim in the Chapter 11 Case or any Successor Case for any claim described herein. Any proof of claim filed by the First Lien Agent shall be deemed

to be in addition to, and not in lieu of, any other proof of claim that may be filed by any of the First Lien Secured Parties.

16. **Section 506(c) Claims**. Only upon the entry of the Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Chapter 11 Case at any time shall be charged against or recovered from the First Lien Secured Parties, or their respective claims or Collateral, pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the First Lien Agent, and no such consent shall be implied from any other action, inaction or acquiescence by any First Lien Secured Party.

17. **Marshalling; Section 552(b) Waiver**. Subject to the entry of the Final Order granting such relief, (a) in no event shall any First Lien Secured Party be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral, and (b) each First Lien Secured Party shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any First Lien Secured Party with respect to proceeds, products, offspring or profits of any of the Collateral.

18. **Binding Effect**.

a) The provisions of this Fourth Interim Order and all rights, remedies, claims, privileges, and benefits in favor of each Prepetition Secured Creditor provided or acknowledged in this Fourth Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Fourth Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including, without limitation, any order which may be entered confirming any plan of reorganization or liquidation,

Case 1:25-bk-02167-HWV    Doc 117    Filed 09/19/25    Entered 09/19/25 12:10:28    Desc
Main Document    Page 27 of 34

converting the Chapter 11 Case to any other chapter under the Bankruptcy Code, or dismissing the Chapter 11 Case.

b) Any order dismissing the Chapter 11 Case under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that all rights, remedies, claims, privileges, and benefits in favor of each Prepetition Secured Creditor provided or acknowledged in the Interim Orders, and the Prepetition Secured Creditors' liens on and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Prepetition Secured Obligations are indefeasibly paid and satisfied in full, and this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Interim Orders.

c) The Interim Orders shall be binding upon the Debtor, all parties-in-interest in the Chapter 11 Case, and their respective successors and assigns, including any trustee or other fiduciary appointed in the Chapter 11 Case or any subsequently converted bankruptcy case of the Debtor or any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"). The Interim Orders shall also inure to the benefit of each Prepetition Secured Creditor, the Debtor, and their respective successors and assigns.

19. **Fifth Interim Hearing and Notice**. The hearing to consider entry of the Fifth Interim Order is scheduled for September 30, 2025 at 11:00 a.m. (Eastern time) in the United States Bankruptcy Court for the Middle District of Pennsylvania, Bankruptcy Courtroom, 4th Floor, Sylvia H. Rambo United States Courthouse, 1501 N. 6th Street, Harrisburg, PA 17102. Any objections or responses to entry of the Fifth Interim Order shall be filed on or prior to September 26, 2025 at 5:00 p.m. (Eastern time). Any party objecting to the relief sought at the Fifth Interim Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be

served on: (a) counsel to the Debtor, Ciardi Ciardi & Astin, 1905 Spruce Street, Philadelphia, PA 19103, Attn: Albert A. Ciardi, III (aciardi@ciardilaw.com); (b) counsel to the First Lien Agent, Morgan Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178-0060, Attn: Michael Luskin (michael.luskin@morganlewis.com) and Stephan Hornung (stephan.hornung@morganlewis.com); (c) counsel to the Creditors Committee, (i) Dentons Cohen & Grigsby P.C., 625 Liberty Avenue, 5th Floor, Pittsburgh, Pennsylvania 15222, Attn: Thomas D. Maxson (thomas.maxson@dentons.com) and (ii) Dentons Bingham Greenebaum LLP, 3500 PNC Tower, 101 S. Fifth Street, Louisville, Kentucky 40202, Attn: James R. Irving (james.irving@dentons.com); and (d) the Office of the United States Trustee, Office of The United States Trustee, Sylvia H. Rambo United States Courthouse, 1501 N. 6th Street, Box 302, Harrisburg, PA 17102 Attn: Joseph Schalk (joseph.schalk@usdoj.gov) and One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07202 Attn: Rachel Wolf (rachel.wolf@usdoj.gov). The Debtor shall promptly serve copies of this Fourth Interim Order (which shall constitute adequate notice of the Fifth Interim Hearing) to all parties having been noticed of the Fifth Interim Hearing and to any party that has filed a request for notices with this Court.

By the Court:

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: September [__], 2025

- 29 -

## EXHIBIT A

### Budget

## EXHIBIT B

## Events of Default

The occurrence of any of the following events, unless consented to or waived by the First Lien Agent in advance, in writing, in its sole and absolute discretion, shall constitute an Event of Default under this Fourth Interim Order:

1.      The failure of the Debtor to perform any of the material terms, provisions, conditions, covenants, or obligations under this Fourth Interim Order, including any failure to comply with the Budget (subject to a 5% permitted variance test on Cash Receipts, which does not include any insurance proceeds, and also a 5% permitted variance test on Current Disbursements, on a cumulative basis based on the approved Budget.);

2.      The entry of any order approving, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor (other than the Prepetition Secured Creditors) to execute upon or enforce a lien on any of Collateral, or (ii) with respect to any lien on or the granting of any lien on any Collateral to any federal, state or local environmental or regulatory agency or authority;

3.      The entry of any order of the Court authorizing any claims or charges entitled to administrative expense claim status in the Chapter 11 Case pursuant to section 364 of the Bankruptcy Code *pari passu* with or senior to the claims of the Prepetition Secured Creditors under Interim Orders or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code or (ii) any lien on any Collateral having a priority senior or *pari passu* with the Prepetition Liens and any liens and security interests granted in the Interim Orders, except, in each case, as expressly provided in this Fourth Interim Order;

4.      The Debtor files any pleading challenging, supporting or encouraging a challenge of any payments made with respect to the Prepetition Secured Obligations; provided, however, that the Debtor providing discovery or information to the Creditors Committee as part of the Creditors Committee's investigation and any Challenge as described in Paragraph 14 of the Fourth Interim Order shall not constitute an Event of Default;

5.      The Debtor files any plan of reorganization or liquidation that is not acceptable in form and substance to the First Lien Agent;

6.      The entry of any order by the Court granting, or the filing by the Debtor of any motion or other request with the Court seeking authority for the use of cash proceeds of any Collateral other than as set forth in this Fourth Interim Order or to obtain any financing under section 364(d) of the Bankruptcy Code not otherwise permitted under this Fourth Interim Order;

7.      The Debtor or any person on behalf of the Debtor shall file any motion seeking authority to consummate a sale of Collateral outside the ordinary course of business not otherwise permitted hereunder or without the consent of the First Lien Agent;

8.      The Debtor makes any payment of principal or interest or otherwise provides any credit on account of any prepetition indebtedness or payables other than payments (i) under orders of the Court as approved by the First Lien Agent, and (ii) payments approved by the First Lien Agent, in each case in accordance with the Budget;

9.       The entry of any order reversing, modifying, staying, amending or vacating any of the Interim Orders; and

10.     Dismissal of this Chapter 11 Case or its conversion to a case under Chapter 7 of the Bankruptcy Code.

*Cash receipts do NOT include insurance proceeds. The use of those proceeds will need to be discussed with the Lenders prior to use of funds. The Lenders' consent to the Interim Cash Collateral Orders and Budgets is not intended and shall not be construed as a waiver of or prejudicial to any of the Lenders' claims, rights or remedies with respect to insurance proceeds, all of which are expressly reserved*

| Week-Ending:<br>Weaber 2.0 cash flow projections | 9/21/2025<br>7 | 9/28/2025<br>8 | 10/5/2025<br>9 |
|---|---|---|---|
| Gross Sales | 1,178,000 | 1,186,522 | 1,059,957 |
| Misc Adjustments, Misc/Returns/Credits/Rebates | (47,668) | (47,753) | (54,186) |
| Net Sales | 1,130,332 | 1,138,769 | 1,005,771 |
| Cash Receipts (used in projections) | 931,588 | 1,048,260 | 1,328,188 |
| Current Disbursements | 959,069 | 1,242,570 | 1,328,252 |
| Operating Cash Flow | (27,481) | (194,309) | (63) |
| Insurance Proceeds (initial advance till settled) | | | |
| Cash on hand- beginning of week | 1,024,036 | 996,555 | 802,246 |
| Cumulative Cash -end of week | 996,555 | 802,246 | 802,182 |
| **Expenses** | | | |
| Category | | | |
| Salaries & Wages | 190,000 | 190,000 | 190,000 |
| Payroll Taxes | 18,000 | 18,000 | 19,000 |
| Group Insurance | 59,500 | 59,500 | 47,600 |
| Workers Comp/Loss Payments | 11,794 | 11,794 | |
| Travel & Entertainment | 3,000 | 3,000 | 3,000 |
| Fuel & Lubricants | 5,000 | 5,000 | 5,000 |
| Trucking | 15,248 | 15,248 | 15,248 |
| P&C Insurance | - | | 116,000 |
| Legal Services | 1,125 | 1,125 | |
| Accounting Services | - | - | - |
| Professional Services | 3,625 | 3,625 | 14,500 |
| Rent Expense | | 58,500 | |
| Repairs & Maintenance | 12,000 | 12,000 | 12,000 |
| 3PL Fees | | - | 150,000 |
| Supplies - Other | 12,000 | 12,000 | 12,000 |
| Taxes - General | - | - | |
| Telephone | 4,625 | 4,625 | |
| Utilities & Deposits | - | 22,500 | |
| Misc./Credit Card/Other | 5,000 | 5,000 | 5,000 |
| Subtotal | 340,917 | 421,917 | 589,348 |
| **Other Expenses** | | | |
| Mgmt/Director Fees | - | | - |
| Interest | 45,152 | 45,153 | 45,154 |
| Pathward Payment | | 72,000 | |
| Income Taxes | - | | - |
| Lumber - KD (incl. purchased treads) | 300,000 | 400,000 | 400,000 |
| Retainers | - | - | |
| UST Fees (Quarterly) | - | | - |
| Debtors' Professional- Legal | 25,000 | 25,000 | 20,000 |

*Cash receipts do NOT include insurance proceeds. The use of those proceeds will need to be discussed with the Lenders prior to use of funds. The Lenders' consent to the Interim Cash Collateral Orders and Budgets is not intended and shall not be construed as a waiver of or prejudicial to any of the Lenders' claims, rights or remedies with respect to insurance proceeds, all of which are expressly reserved*

| Week-Ending: | 9/21/2025 | 9/28/2025 | 10/5/2025 |
|---|---|---|---|
| Debtors' Professional- FA | 5,000 | 5,000 | 4,000 |
| Committee Professionals | 10,000 | 10,000 | 10,000 |
| Bank's Professionals- Legal | 55,000 | 55,000 | 55,000 |
| Bank's Professionals- Financial Advisor | 43750 | 43750 | 25,000 |
| Critical Vendor Alexandra | | | |
| Critical Vendor Woodgrain | | | |
| Critical Vendor Neptune | | | |
| Central Penn Machinery- relocate Paintline | | 67,000 | |
| Capital Expenditures | 12,500 | 12,500 | 10,000 |
| **Subtotal - other exp** | | | |
| | 496,402 | 735,403 | 569,154 |
| | | | |
| **Fire Related Expenses- expect reimbursement** | | | |
| Salaries & Wages | 32,500 | 32,500 | 32,500 |
| Payroll Taxes | 3,250 | 3,250 | 3,250 |
| Fuel & Lubricants | | | |
| Trucking | 12,500 | 12,500 | 7,500 |
| Repairs & Maintenance | 15,000 | 15,000 | 15,000 |
| Tools | 5,000 | 5,000 | 30,000 |
| IT Equipment - Printers | 4,000 | | |
| Supplies - Other | 15,000 | 15,000 | 15,000 |
| Prof Services | 4,500 | 2,000 | 16,500 |
| Lumber | | | 50,000 |
| Building Demo/Rent (walls only) | 30,000 | | |
| Misc | | | |
| **Fire Expenses thru 10/26/25** | 121,750 | 85,250 | 169,750 |
| Total Expenses | 959,069 | 1,242,570 | 1,328,252 |