UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In Re:

WEABER, INC.,

Debtor.

Chapter 11

Case No.: 25-02167-HWV

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ENTRY OF A FINAL ORDER GRANTING THE EMERGENCY MOTION OF WEABER, INC. FOR ORDER PURSUANT TO 11 U.S.C. § 363 TO: (I) PERMITTING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION TO PARTIES WITH INTEREST IN CASH COLLATERAL, (II) AUTHORIZING PAYMENT OF PREPETITION WAGES, (III) REQUESTING AN EXPEDITED HEARING, REDUCED NOTICE PERIOD AND LIMITED NOTICE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(c)(1) AND M.D. PA. L.B.R. 9075-1(A) AND (IV) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Weaber, Inc., debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), hereby makes this objection (the "Objection") to the entry of a final order (a "Final Order") granting the *Emergency Motion of Weaber, Inc. for Order Pursuant to 11 U.S.C. § 363 to: (I) Permitting Use of Cash Collateral and Providing Adequate Protection to Parties with Interest in Cash Collateral, (II) Authorizing Payment of Prepetition Wages, (III) Requesting an Expedited Hearing, Reduced Notice Period and Limited Notice Pursuant to Federal Rule of Bankruptcy Procedures 9006(c)(1) and M.D. Pa. L.B.R. 9075-1(A) and (IV) Granting Related Relief* [Docket No. 11] (the "Cash Collateral Motion"). In support of this Objection, the Committee respectfully states as follows:

### INTRODUCTION

1. The Committee believes that the Debtor should be authorized to use the cash collateral (the "Cash Collateral") of its pre-petition secured creditors. However, the Committee objects to certain provisions of a proposed Final Order which unjustifiably benefit the Debtor's

1

25128175.v1

Case 1:25-bk-02167-HWV    Doc 143    Filed 09/26/25    Entered 09/26/25 16:34:03    Desc
Main Document    Page 1 of 11

allegedly senior secured creditor, JPMorgan Chase Bank, N.A. ("JPMC"), at the expense of the Debtor's bankruptcy estate and its general unsecured creditors.

2. Specifically, the Committee insists that any Final Order should: (i) not permit JPMC or other secured creditors a replacement lien on the proceeds of the Debtor's causes of action under chapter 5 of the Bankruptcy Code and similar state law (collectively, the "Avoidance Actions"), which should be reserved for the benefit of unsecured creditors; (ii) JPMC's professional fees in the budget attached to the Final Order (the "Budget") must be reduced from over $95,000 this week alone to a reasonable number of not more than $50,000 per week, which is in proportion to the Debtor's professional fees and so that the Debtor is not deprived of critical cash during the pendency of the Chapter 11 Case; (iii) the Committee's professional fees in the Budget should be modestly increased from $10,000 per week to $15,000 per week to allow them to meaningfully participate in the case and advocate for the interests of their constituency; (iv) the events of default for the use of Cash Collateral should be modified so that JPMC does not exercise undue control over the Debtor in the Chapter 11 Case, and specifically the Debtor must be able to propose a plan or file a motion for the sale of assets under section 363 of the Bankruptcy Code without the prior consent of JPMC; (v) the Debtor's bankruptcy estate should not be required to waive its surcharge rights under section 506(c) of the Bankruptcy Code and its related marshalling and "equities of the case" arguments; and (vi) for the avoidance of doubt, the Final Order must clarify that to the extent the Committee successfully "challenges" the claim of a secured lender that the secured lender will not have a replacement lien on the property of the Debtor's bankruptcy estate which was subject to the "challenge."

3. The Committee has been in discussions with the Debtor's professionals, JPMC's professionals and other parties in interest in the case since it engaged counsel. The Committee

seeks to resolve as many of its issues as possible before the hearing on the Cash Collateral Motion scheduled for September 30, 2025. However, given the September 26, 2025, filing deadline the Committee files this Objection to preserve its arguments for the benefit of the Debtor's bankruptcy estate and its unsecured creditors.

## BACKGROUND

4. On August 1, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the chapter 11 case proceeding before this Court as *In re Weaber, Inc.*, Chapter 11 Case No. 25-02167-HWV (the "Chapter 11 Case").

5. On the Petition Date, the Debtor filed the Cash Collateral Motion, by which it sought entry of an interim and then a final order authorizing the use of Cash Collateral.

6. On August 5, 2025, JPMC filed a limited objection to the Cash Collateral Motion. [Docket No. 26].

7. On August 6, 2025, the Bankruptcy Court conducted a hearing on the Cash Collateral Motion, JPMC's objection, and certain other "first-day" motions filed by the Debtor. At that hearing, the Bankruptcy Court indicated that it would enter an order authorizing the Debtor's use of cash collateral on an interim basis. Indeed, on August 6, 2025, the Bankruptcy Court entered the first interim order authorizing the Debtor's use of cash collateral. [Docket No. 32]. The Bankruptcy Court subsequently entered a second [Docket No. 52], third [Docket No. 87], and fourth [Docket No. 122] (the "Fourth Interim Order") interim order authorizing the Debtor's use of Cash Collateral. A final hearing to consider the Debtor's use of Cash Collateral is scheduled for September 30, 2025.

8. On August 25, 2025, the Office of the United States Trustee (the "UST") formed

the Committee. The members of the Committee are: (i) Thunder Staffing, Inc.; (ii) Laird Logs, LLC; and (iii) York Saw & Knife Co., Inc.

9. On September 8, 2025, there was a significant fire at the Debtor's headquarters in Lebanon County, PA which damaged certain inventory, equipment and buildings. The Debtor has submitted a claim to its insurers, but is still operating out of its other buildings.

10. On September 18, 2025, the Debtor filed its *Schedules of Assets and Liabilities* [Docket No. 109] (the "Schedules"). In the Schedules, the Debtor stated that it has assets with a value in excess of $221,000,000. In the Fourth Interim Order, the Debtor has stipulated that JPMC has a claim in the principal amount of $25,452,645.96 on the Petition Date, which claim is secured with a perfected, first-priority security interest in the Debtor's assets. [Docket No. 122, E.(ii)]. The Committee has the right to investigate and "challenge" any stipulation regarding the claims and liens asserted by JPMC and the Debtor's other secured creditors.

## ARGUMENT

11. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use, sell, or lease cash collateral unless:

> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2). In the absence of a secured creditor's consent, a debtor may only use cash collateral if adequate protection has been provided to the creditor. 11 U.S.C. § 363(e).

12. "The Bankruptcy Code does not define the term adequate protection although it does specify three nonexhaustive examples of it. The case law indicates that a secured creditor is adequately protected if the value of the encumbered property is sufficiently in excess of the secured indebtedness." *In re Llewellyn*, 27 B.R. 481, 482 (Bankr. M.D. Pa. 1983) (citations omitted); s*ee*

4

25128175.v1

Case 1:25-bk-02167-HWV    Doc 143    Filed 09/26/25    Entered 09/26/25 16:34:03    Desc
Main Document    Page 4 of 11

*also In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) (citing *In re Mellor,* 734 F.2d 1396, 1400 (9th Cir. 1984); *In re Ritz Theatres, Inc.,* 68 B.R. 256, 257-58 (Bankr. M.D. Fla. 1987)); *see also Baybank Middlesex v. Ralar Distribs.*, 69 F.3d 1200, 1203 (1st Cir. 1995); *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994) ("An equity cushion, therefore, provides adequate protection if it is sufficiently large to ensure that the secured creditor will be able to recover its entire debt from the security at the completion of the case."). "Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection." *In re McKillips*, 81 B.R. at 458 (collecting cases); *see also In re C.B.G. Ltd.*, 150 B.R. 570, 573 (Bankr. M.D. Pa. 1992) ("case law almost uniformly concludes that: (1) an equity cushion of twenty percent (20%) or more constitutes adequate protection; (2) an equity cushion of less than eleven percent (11%) is insufficient; and (3) a range of twelve percent (12%) to twenty percent (20%) has divided the Courts.") (citing *In re McKillips*, 81 B.R. at 458).

13. Here, judging just by the Debtor's Schedules, JPMC is significantly oversecured and this alone should provide adequate protection to them and the other secured creditors sufficient to justify the use of cash collateral. However, recognizing that the valuation of the Debtor's assets in the Schedules may not be precise, the Committee is content to support JPMC and other lenders receiving additional adequate protection. Whether in the form of payments in the Budget attached to the Final Order, some professionals' fees, replacement liens, and a superpriority expense claim, the Committee can countenance this relief so that the Debtor can continue to fund its reorganization. However, JPMC and the other secured creditors should not be granted liens on the proceeds of avoidance actions, a budget for excessive professional fees, or overt control over the Debtor's chapter 11 process.

**A. The Final Order Should Not Place Liens on the Proceeds of Avoidance Actions.**

14. Avoidance actions and the proceeds thereof are designed for the benefit of a debtor's bankruptcy estate and should not be encumbered in favor of secured creditors. Indeed, when a recovery action is commenced, "any recovery is for the benefit of all unsecured creditors, including those who individually has no right to avoid the transfer." *Buncher Co. v. Official Committee of Unsecured Creditors (In re GenFarm Ltd. P'ship IV)*, 229 F.3d 245, 250 (3d Cir. 2000) (citing 2 *Collier Bankruptcy Manual* ¶ 544.09[5] (Larence P. King ed., 3d ed. rev. 1999)). A lender cannot assert a pre-petition lien on avoidance actions. *In re BDC Group, Inc.*, 23-00484, 2024 WL 4137984 (Bankr. N.D. Iowa Sept. 10, 2024). Further, bankruptcy courts often restrict a debtor's ability to assign avoidance actions and their proceeds as part of a sale or as collateral. *See, e.g., In re Texas General Petroleum Corp. v. Evans (In re Texas General Petroleum Corp.)*, 58 B.R. 357, 358 (Bankr. S.D. Tex. 1986); *United Capital Corp. v. Sapolin Paints Inc. (In re Sapolin Paints Inc.)*, 11 B.R. 930, 937 (Bankr. E.D.N.Y. 1981).

15. Here, when JPMC and the other secured creditors are at first-glance over secured, and while they are receiving other forms of adequate protection such as payments during the pendency of the case, some professionals' fees, super-priority claims, etc. – the secured creditors should not be given the extraordinary remedy of liens on the proceeds of avoidance actions. These causes of action are intended for the benefit of the Debtor's unsecured creditors, and this court should not allow these assets to become another piece of the secured creditors' collateral package.

**B. JPMC's Professional Fees Should Be Reduced to No More than $50,000 Per Week in the Budget Attached to the Final Order.**

16. The current Budget allocates just shy of $100,000 per week to pay JPMC's professional fees. This is more than three times as much as the Budget designates for the Debtor's professional fees for the same time period.

17. Section 506(b) of the Bankruptcy Code allows an oversecured creditor to recover reasonable fees if the agreement under which the oversecured creditor's underlying claim arose provides for such fees. 11 U.S.C. § 506(b). However, "[a]n oversecured creditor should not be given a 'blank check' to incur attorney fees and costs with the expectation it will automatically be reimbursed for those fees and costs out of its collateral." *In re McGuier*, 346 B.R. 151, 165 (Bankr. W.D. Pa. 2006); *See also United States v. Ron Pair Enters.*, 109 S. Ct. 1026 (1989) ("Recovery of post-petition interest is unqualified, whereas recovery of those fees, costs, and charges is allowed only if they are reasonable and provided for in the agreement under which the claim arose.").

18. In the updated, proposed Budget, beginning the week of October 5, 2025, JPMC and its financial advisor are set to receive a total of $75,000 per week in professional fees over the next nine weeks. While this is Budget is not final, under this newly proposed Budget, JPMC's professionals would still receive two and a half times as much in professional fees as the Debtor's professionals on a weekly basis. The amount of fees now earmarked for JPMC in the newly proposed Budget is simply unwarranted for a case of this size and hamstrings the already cash strapped Debtor, especially here, when Cash Collateral is funding the Chapter 11 Case. The amount of JPMC's professional fees should be reduced to $50,000 per week and any amount over $50,000 should be deferred, to the extent that JPMC is entitled to such fees.

**C. The Committee's Professional Fees Should Be Increased to $15,000 Per Week in the Budget Attached to the Final Order.**

19. In refusing to approve a proposed financing arrangement with restrictions on the budget of professionals who would challenge liens and investigate claims against secured lenders, the court in *In re Tenney Village Co.*, 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989), reflected on the harm of these types of requests:

[T]he Bank would close the purse strings to payment of Debtor's counsel for

services devoted to any claim or defense against the Bank, except for the $25,000 retainer. . . . It is said that a Chapter 11 lender should not be required to finance the prosecution of claims and defenses against it. That is true. If the lender believes that this will occur, it can elect not to make the loan. It cannot expect, however, to change the rules of a Chapter 11 case. We have here much more than the common provision giving counsel to a creditors' committee a limited period to object to a lender's liens

*See also In re Cuisinarts, Inc.,* 115 B.R. 744, 751 n.8 (Bankr. D. Conn. 1990) (quoting the language from *Tenney* as support for the court's previous refusal to restrict the use of funds from the "carve-out" to investigate the Bank's claims).

20. Here, the Budget attached to the Fourth Interim Order provides just $10,000 per week to the Committee's professionals, which is approximately 1/3rd of the Debtor's professional budget and just more than 1/10th of JPMC's professional budget for the same period. Perhaps there are extenuating circumstances – such as playing catch-up – that explain JPMC's professional budget during this period of time, but nonetheless, there is a material discrepancy in resources available for the parties here to advocate for their constituents' interests. The Committee's professionals' budget should be increased to at least $15,000 per week in addition to reducing the JPMC's professional's fees budget.

### D. The Final Order Should Not Waive Arguments Regarding Surcharge, Marshalling and Equities of the Case.

21. It is appropriate for JPMC and the other secured creditors to establish events of default related to the use of Cash Collateral. However, the events of default set forth in the Fourth Interim Order are too extreme and go so far as to give JPMC undue control and influence over the trajectory of this chapter 11 case. Specifically, if the Debtor or another party files a plan of reorganization that is not to JPMC's liking, that should not be an event of default. JPMC may well have the economic and legal position to block any plan that it does not support – though that is yet to be determined – but JPMC should not gatekeep whether any plan may even be filed with the

8

Bankruptcy Court. Similarly, the Debtor should be able to file a motion for the sale of assets outside the ordinary course of business under section 363 of the Bankruptcy Code without JPMC's prior consent. Again, JPMC might be able to credit bid to acquire the relevant assets or successfully object, but it cannot use the threat of denying the Debtor the use of operating cash to prevent pleadings it does not like from hitting the Bankruptcy Court's docket.

### E. The Final Order Should Not Waive Arguments Regarding Surcharge, Marshalling and Equities of the Case.

22. Surcharge, marshalling and equities of the case are significant arguments to be wielded by a debtor or creditors committee. This is especially true in a case like this one where JPMC may already be oversecured and where another secured creditor, Cyprium, may have had members holding pre-Petition Date board seats with the Debtor. Accordingly, a waiver of these arguments is impermissible.

### F. There Should Be No Replacement Lien on Property Subject to Successful Challenge.

23. The Final Order must clarify that if the Committee successfully challenges a claim or lien of a secured creditor, that any replacement liens provided as adequate protection will not attach to that property of the Debtor which may have been subject to the challenge.

### RESERVATION OF RIGHTS

24. The Committee expressly reserves all rights, claims, arguments, defenses, and remedies with respect to the secured lenders' claims or any other issue in this chapter 11 case, and to supplement, modify, and amend this Objection, to seek discovery, and to raise additional objections in writing or orally at any hearing on the Cash Collateral Motion.

WHEREFORE, the Committee respectfully requests that this Court enter an order (i) consistent with this Objection granting the Debtor's use of Cash Collateral, and (ii) granting such other and further relief as this Court deems just and proper.

Dated: September 26, 2025

Respectfully submitted,

*/s/ James R. Irving*
James Irving (Admitted *Pro Hac Vice*)
David K. Boydstun, Jr. (*Pro Hac Vice Pending*)
DENTONS UNITED STATES, LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Phone: (502) 587 3606
Email: james.irving@dentons.com
       david.boydstun@dentons.com

-and-

Thomas D. Maxson (Admitted *Pro Hac Vice*)
DENTONS UNITED STATES, LLP
625 Liberty Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 297 4772
E-mail: thomas.maxson@dentons.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

  I certify that on September 26, 2025, the above and foregoing document was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

  <u>X</u>  upon filing, the Court's electronic noticing system sent notice to all parties participating in the CM/ECF system in this matter.

            */s/ James R. Irving*
            James R. Irving

11

25128175.v1

Case 1:25-bk-02167-HWV Doc 143 Filed 09/26/25 Entered 09/26/25 16:34:03 Desc
Main Document Page 11 of 11